and afterwards a motion in arrest of judgment which was over-ruled. The record of the proceedings of the Circuit Court was not filed in the prothonotary's office, until the 28th December, which was fourteen days after the term commenced. And now Mr. Hopkins for the plaintiffs moved that the judgment should be confirmed, as if the appeal had not been made. The counsel for the defendants had not subscribed a certificate, nor had the proceedings been filed in due time; both of which grounds were solid objections against the appeal, under the 4th section of the law of 20th March 1789. 4 St. Laws 364.

Mr. Duncan for the defendants stated, that he had understood no decision had taken place on the motion for a nonsuit, the court being divided, and that there could not be an appeal, unless there had been a judgment.

By THE COURT. It appears from the Chief Justice's notes, that the motion for a nonsuit was rejected. The members of the Circuit Court being divided, would operate as a decision on that question. The two objections which have been made to the appeal render it unavailable, under the express terms of the Circuit Court law.

Record remitted.

## Thomas Shelby *against* John Boyd and William Richardson.

In a suit for lawful money of North Carolina, court will not permit paper money to be brought into court, unless it be a legal tender.

DEBT was brought on an obligation for 1000l. lawful money of North Carolina, dated 30th November 1786, conditioned for the payment of 500l. like lawful money on the 1st November 1787. The defendants pleaded payment with leave, &c., and gave notice of the special matters intended to be insisted on at the trial, which went to prove a want of consideration.

*The cause was ordered for trial in April last, at the [*322 last Circuit Court for Lancaster county, where it was agreed, that judgment should be entered for the plaintiff, and that the execution thereon should stay, until the next Supreme Court, when the defendant should be at liberty to move to pay into court lawful money of the state of North Carolina in satisfaction of the bond, as if the same judgment had not been entered; and if the said motion should not be made effectual by the judgment of the said court, then the judgment entered to stand for the principal and interest of the balance of the obligation in specie.

Mr. Dallas for the defendants now moved for leave to pay into court certain paper bills of credit, said on the face of them

[Shelby *v.* Boyd et al.]

to have been emitted, in pursuance of an act of the state of North Carolina, passed on the 19th December 1785, and produced the deposition of Joseph Tagert, proving that these bills were and now are in circulation in that state, and that they sell from 12s. to 15s. for a silver dollar.    The *lex loci* must govern in a case of this kind, when it appears on the bond, that it was executed in North Carolina.    These bills were a legal tender at that time, and were the objects of the bond.    If the court on the trial would have allowed an offer of this money, they will do so now.    It merely fulfils the contract of the parties.    The court will give leave to withdraw the general issue, in order to bring money into court; and replead it, when it does not delay the plaintiff.  2 Stra. 1271.    5 Com. Dig. 22.    Pleader C. 10. Where the defendant is entitled to pay money into court, it is a matter of course before plea pleaded; and now even after plea, it is perpetually done by a judge's order made for that purpose. 1 Term Rep. 711.

The motion was opposed by Mr. M'Kean for the plaintiff. The law of North Carolina is not shewn, under which these bills of credit were emitted, nor is it ascertained whether they are a legal tender.    The deposition of Tagert does not go to this point; and if these bills were ever tenderable, that quality is now probably taken from them.    By the 10th section of the 1st article of the constitution of the United States, no state shall emit bills of credit, or make any thing but gold and silver coin a tender in payment of debts.    If the contract really contemplated such bills of credit, they might at the time have been equal in value to gold and silver; but if they had depreciated, and had not been tendered in the manner prescribed by the laws of North Carolina, they could not now be brought into court, but their specie value at the time of the contract.    This suit is brought *for the penalty of the bond, lawful money of North Carolina equal in value to so much Pennsylvania currency; and for this latter currency, judgment must be rendered.    If the contract be for foreign coin, it may either be demanded as such, or its sterling value. 1 Leon. 41.    If the agreement had respected the continental bills of credit, and no tender had been pleaded, the court would not suffer the paper emitted by congress to be paid into court, but only its specie value when the agreement was entered into.    Here the court are wholly in the dark respecting the money offered to be paid in; and in 1 Dall. 175, the court refused parol evidence of the value of lawful current money.

There has been great delay in the present case.    A judge under all the circumstances would not have given an order to pay the money into court.    Formerly money could not be brought into court, after plea pleaded.  5 Bac. Abr. 22.    If it was taken out of court, and any part of the bills of credit turned out to be counterfeit, such part could not be returned. Ib. 6.    5 Co. 115.

[Stein's Lessee v. North.]

The defendants here relied on the want of consideration as to the bond, and gave notice accordingly. The plaintiff came prepared on that issue, and not to examine into the value of the bills offered, or whether they were genuine or not.

*Per curiam.* It does not appear to us, that the bills of credit offered to be paid into court, are a legal tender, and therefore we cannot admit them to be brought into court. We cannot say, on the face of the obligation, that the contract refers to such money.

Judgment absolute.